NEHEMIAH LARRABEE, *petitioner, versus* GEORGE W. RIDEOUT.

A., claiming to be tenant in common with B., filed his petition for partition of two distinct parcels of land, described in his petition, in separate counts; and, on the issue that B. was sole seized of both parcels, the verdict was in his favor as to the first count, and for the petitioner as to the second. At a subsequent term, (as the record shows,) it was considered by the Court that the petitioner take nothing in the premises described in the first count, and that partition be made of the premises described in the second; and commissioners were appointed to make partition. The action was then continued from term to term; and, at the term to which it was last continued, the petitioner appeared and had leave to discontinue his petition, and the respondent had judgment and execution for costs. In an action, on petition for partition, brought by the same petitioner against the devisee of the respondent in the former suit, for partition of the premises described in the first count of the former petition, it was *Held :—*

That such entry of discontinuance did not vacate the verdict and judgment so rendered for the respondent in the former action; and *that* the judgment in that suit is a bar to the petitioner's recovering against the respondent in this action. CUTTING, J., dissenting.

PETITION FOR PARTITION of two parcels of land described in separate counts in the petition. The petitioner claims three-eighteenth parts in common with the respondent of each of said parcels.

The case was entered at the January term, 1856, and tried at October term, 1857, before APPLETON, J. The verdict was for the petitioner. The case is presented on EXCEPTIONS, taken by the respondent to various rulings and instructions of the Judge at the trial.

It appears, by the bill of exceptions, that the respondent pleaded sole seizin; and also, by brief statement, alleged that the petitioner was estopped by a former judgment, upon a

verdict rendered on the same issue, in a case of petition for partition, brought by said Larrabee and one Dakin, claiming partition of the same premises, and in the same proportion in favor of said Larrabee as that now claimed, and presented and offered in evidence a duly authenticated copy of said former judgment. The identity of the premises, described in the first count of the former petition, with the premises described in the first count of the pending petition, was admitted. The presiding Judge ruled that the judgment in the former suit is no bar to this petition.

Depositions, taken before the Judge of the municipal court of the town of Brunswick, were admitted against the objection of respondent's counsel. There were several instructions to the jury excepted to and fully argued, but, as they are not considered in the opinion of the Court, further reference to them becomes unnecessary.

By the record of the judgment on the former petition, it appears that, at the November term, 1850, Mary Larrabee, the respondent in that case, pleaded sole seizin. The jury found the respondent was sole seized of the premises described in the first count of the petition; and that the petitioners were seized in fee of five-sixth parts of the premises described in the second count of said petition. The action was then continued from term to term, on motion of petitioners, to set aside the verdict, and, on exceptions filed by petitioners, which had been signed and allowed by the presiding Judge, until April term, 1853, when the motions and exceptions were overruled. At the April term, 1854, "it was considered and ordered by the Court that the petitioners take . nothing in the premises named in the first count of their petition, and that partition of the premises named in the second count of their petition be made according to the verdict of the jury." And commissioners were appointed to make partition.

"The petition was then continued from term to term to the present term, [April term, 1855.] And now the said petitioners appear and have leave to discontinue the said petition against the said Mary Larrabee."

" It is therefore considered by the Court that the respondent recover, against the said petitioner, her costs of suit." Execution for costs issued Nov. 10, 1855.

The said Mary Larrabee died in the year 1855, and her will was duly proved. The respondent claims as devisee under her will; and the petitioner, under her deed to him, dated March 9, 1842.

*Gilbert*, in support of the exceptions, argued that the record of the former judgment was wrongfully excluded:—

1. There was a verdict on this identical issue in favor of the respondent's testator, confirming her title.

2. All dilatory questions being settled by the law court, judgment follows by the spontaneous action of the law.

3. That judgment must be the appropriate one. Such, and such only, as the law prescribes, to be based upon the verdict rendered.

4. The verdict being in favor of the petitioners for partition of other premises, and in favor of respondent's testator, the respondent there establishing sole seizin in these premises, the law prescribed judgments of opposite effect; interlocutory in one, and final in the other. R. S. of 1841, c. 121, § 17.

5. As to the latter, the case neither was, nor could be longer in court. Judgment was rendered, and the Court had no further control over it, without new process, as by petition for review or writ of error.

6. By the verdict, the respondent in that case acquired a right which could not be taken from her; and, as a matter of construction, we are to presume that when the Court granted leave to discontinue, that leave applied and could only apply to that part of the petition then pending; that is to say, to that count in the petition upon which the verdict was in the petitioner's favor, and the proceedings then pending upon the interlocutory judgment. 2 Johns. 181 and 191; 7 Conn. 414 and 418.

*Shepley & Dana,* for the petitioner:—

By c. 84 of laws of 1854, the Judge of the municipal court of Brunswick was authorized to act as a justice of the peace, in all matters. The depositions were, therefore, rightfully admitted.

The record of the proceedings in the former case disclosed no such judgment as was a bar to the present proceeding.

The only judgment rendered in the former case was one giving the petitioner leave to discontinue. This was a matter entirely within the power and discretion of the Court, and the right of the Court to enter this judgment or order cannot be questioned here.

A nonsuit or discontinuance does not prevent the plaintiff from bringing another action for the same cause. *Knox* v. *Waldoboro',* 5 Greenl. 185; *Hull* v. *Blake,* 13 Mass. 153, 155; *Bridge* v. *Sumner,* 1 Pick. 371; *Morgan* v. *Bliss,* 2 Mass. 113.

Judgment is not rendered by the spontaneous action of the law, nor is it rendered by the law in any sense. It is the province of the Court to render judgment. They render such judgment as the law authorizes them to, if they see fit.

A legal judgment is the determination of the mind of him who expounds and applies the law. Without it, the law cannot be enforced.

A criminal has been convicted of a crime by the verdict of a jury, and the Court neglects to render judgment, and finally the indictment is *nol. pros'd.* The Court *might* have rendered judgment, but, till that was done, the criminal was in the hands of the Court, who might thus virtually pardon; when, if the law had been executed, this prerogative would have vested with the executive.

It cannot be doubted, that, as long as a process is before the Court, it is for the Court to make such disposition of it as seems fit. *Locke* v. *Wood,* 16 Mass. 317; *Haskell* v. *Whitney,* 12 Mass. 47, and editor's note.

What was pending when the Court allowed the petitioner to discontinue? Simply a petition in which a special verdict

had been rendered.   Upon such a verdict, judgment does not follow of course.   *Mirwan* v. *Ingersoll*, 3 Cowen, 367.

There is no pretence that judgment was moved for by counsel, and the docket of the Court, from which the record is made up by the clerk, does not show any thing further than the mere rendition of a verdict.   That part of the record which declares that the Court " considered and ordered that the petitioners take nothing in the premises named in the first count," &c., is simply the " legal opinion" of the clerk as to the effect of the verdict.

But this, we submit, is a proper matter for the *Court* to determine.   In all proceedings of this nature, the judgment is reserved till the final disposition of the cause.

Interlocutory orders, necessary to the progress of the cause, are constantly made; but further than this the Court does not act.   If different rights are fixed during the progress of the cause, the appropriate entry is made, and, when the cause comes to be disposed of, these rights are perfected by appropriate judgments.

But the Courts of law are not continually issuing executions on issues raised during the pendency of a cause; such a course would tend to inextricable confusion.   The different issues raised and passed upon are but parts of a cause, and are only effectuated by a judgment on its final disposition. *Beebe* v. *Griffing*, 2 Selden, 465, cited in U. S. An. Digest, 1854, p. 458, § 9.   Until this disposition, they are held in suspense; if, by that, the petitioner is allowed to withdraw from Court, he stands, after payment of cost, as though he had never entered his complaint.

It is only after final judgments in a cause, that appeals or exceptions on interlocutory orders made in that cause can be brought forward.

It is true, commissioners were appointed here, but there was no interlocutory judgment *quod partitio fiat*, nor any judgment that petitioner should take nothing on his first count.

If it were otherwise, still all the orders and interlocutory

judgments rendered during the pendency of a cause are but
the provisional determinations of the specific issues presented,
but all made to depend upon, and be determined by, the final
disposition of the cause.

Suppose, after a verdict, it should appear that the Court
had no jurisdiction of the cause or the parties, the reasoning
of respondent's counsel would entitle him to all the benefits
of the verdict, though the Court should finally determine that
it had no authority to receive it.

A petition is entered and sundry proceedings had under it;
and finally the petitioner is allowed to discontinue his peti-
tion. When that order is passed, what is there on which the
Court can base a judgment, except the mere fact that after en-
try and discontinuance the respondents are entitled to costs?
Except for this purpose, the whole proceedings are vacated.
If the respondents were not willing that petitioners should
have this leave, they should have appeared and been heard.
But, as the record stands, this judgment of discontinuance is
the only one which has been rendered.

The only *judgment* that appears is the judgment for *re-
spondent's costs* on discontinuance. In terms, the docket entry
is confined to that, and, if the record shows any other judg-
ment, it is erroneous, and the Court have it in their power to
correct the error.

The docket entry of April term, 1855, is "discontinued,"
"costs for respondent."

According to the argument of respondents' counsel, the
respondent in the former case obtained two judgments; one
for her costs on the verdict, and another for her subsequent
costs on the discontinuance. But how was the cost taxed?
The docket, and record and the papers from which the record
is made, show that after verdict no cost was taxed, though
respondent was entitled to costs if she had judgment; but,
though the judgment claimed by respondents' counsel was
rendered in April, 1854, he did not take execution for costs
till November, 1855, at which time no execution for costs
could legally be issued, being more than a year after what

respondent claims was a rendition of final judgment in his testator's favor. The taxation shows that the costs of respondent, incurred prior to April, 1854, were included in the execution, while his argument goes on the ground that, in April, 1854, respondent's testator obtained a judgment which entitled her to full costs up to that time; and that all the subsequent costs she could recover would be for the subsequent continuance of the petition in court.

This is alluded to, to show that, until after the filing of this second petition, the parties and Court did not consider the judgment on the former any thing more than on a mere discontinuance.

In *State* v. *Benham*, 7 Cowen, cited by counsel of respondent, a verdict of guilty on an indictment still pending was pleaded by defendant in bar to another indictment found at the same term for the same offence, and the Court held the verdict a bar, on the ground that any other course would put the defendant twice in jeopardy for the same offence. See concluding paragraph of Judge WILLIAMS' opinion in that cause.

*Gilbert*, in reply: —

The special statute of 1854 was unknown to me, until it was cited in the argument of the opposite counsel. It confers on judges of municipal courts the powers of justices of the peace. It contemplates that they should act as such. But, in taking the depositions, the judge did not act as a justice of the peace.

At the trial, the record offered was ruled out, because the petitioners, in that case, upon verdict, recovered judgment for partition of other premises, and, before final judgment as to the partition of other premises, the petitioners discontinued. The record, however, discloses a judgment in the respondent's favor upon the verdict recovered by her.

When the verdict is rendered and all intervening questions are settled, the law prescribes the judgment; and, in the eye of the law, that judgment follows with unfailing cer-

tainty. The Judge has no discretion in the matter. He cannot interpose either to withhold or to vary the judgment.

It is not a case where the law confers upon the Judge power to render one judgment or another, according to his sense of legal right.

The presiding Judge never dictates the form or nature of the judgment. He enters a general order on the last day of the term, not as to the form of any judgment, but that judgment be rendered, as of that day, in all matters of final decision, except those in which judgment has been rendered of a former day. And then the clerk records the proceedings and the conclusion of law in each case.

When the form or substance of the judgment is discretionary, then, only, the Judge makes special order as to so much.

In *Marsh* v. *Pier,* 4 Rawle, 288, 289, KENNEDY, J., says, " But a judgment of a proper court, being the substance or *conclusion of the law* upon the facts contained in the record, puts an end to all further litigation on account of the same matter."

Where a criminal has been convicted by a verdict, a case is presented of legal discretion in the Judge. The law makes it his duty to award sentence, in his discretion, within certain limits fixed by law. Or, he may, if he sees fit, permit a *nol. pros.* to be entered, if moved by the prosecuting officer for the State. But, though he may " thus virtually pardon" a crime against the State, he may, in no wise, pardon a private right of a suitor, which he has acquired by a verdict.

But, in the case the record of which we offered, the law was peremptory. The verdict determined that the petitioner had no estate or interest in the land in question. That being so settled, neither the respondent in that suit, nor her devisee, could be again vexed for the same cause; and the statute gave her costs. R. S. of 1841, c. 121, § 13. And judgment must follow with certainty.

But judgment *was actually rendered.* So says the record;

and that judgment, right or wrong, cannot be attacked in this indirect manner.

Nor is the proposition a correct one, " that, as long as a process is before the Court, it is for the Court to make such disposition of it as seems fit." Applied to this case, it is saying that, after verdict, and after all legitimate efforts to get rid of the verdict had been exhausted, the Court had the power to order, peremptorily, leave to discontinue, not only as to that in which the verdict was for the petitioners, but also to that as to which the verdict was for the respondent, the devisor of the respondent in this action.

The cases cited by counsel, (16 Mass. 317, and 12 Mass. 47, and editor's note,) show authoritatively that, after trial has commenced, or after reference by rule of court, the plaintiff has no right to become nonsuit, without the consent of the adverse party, or leave of Court granted for good cause. And, by implication, they go still further, to the extent that, after verdict, there is no such right or power.

But, grant that such a discontinuance could be had, what then ? There was none such in this case, as to that part of the verdict for respondent; for, upon the verdict, judgment had been rendered. So says the record; and the record must stand until changed or annulled by the appropriate process.

The verdict was not a " *special* " one; it was a general and direct finding of the issue joined. But, whether special or general, judgment has been rendered upon that verdict, as the record of the case shows.

The counsel very fitly inquire, " what was pending when the Court allowed the petitioners to discontinue ?" [Here counsel traced the proceedings in the case, as shown by the record.] What was pending ? Simply the partition of the premises to which the petitioners had been found entitled. Nothing more. Certainly not any question as to the other land. That question had been so decided, that nothing more could be done. The rights of the parties had been fixed by the verdict. And these rights could not be changed. The

Larrabee *v.* Rideout.

verdict had separated the two parts of the petition; and the action for the Court was necessarily different in the two, interlocutory in one, final in the other.

If there had been no other land involved than that respecting which the verdict was for the respondent, could any one doubt what would be the rights of the parties? And were those rights changed, because the petitioners had embraced other lands in the same petition, and saw fit to abandon their proceedings before final judgment as to them?

The opinion, concurred in by a majority of the Court, was drawn up by

HATHAWAY, J. — A petition for partition of two parcels of land, described in the first and second counts in the petition, of each of which parcels, the petitioner claimed to own three undivided eighteenth parts, in common and undivided.

The respondent pleaded sole seizin, and a former judgment, in bar, and, an issue having been duly submitted to the jury, a verdict was rendered for the petitioner, and the case is presented on exceptions to the rulings of the Judge at the trial.

The admission of the depositions of Mrs. Merry and James Ham was objected to, because they were taken before the justice of the municipal court of Brunswick, acting in his official capacity as justice of that court. The statute of 1850, establishing that court, c. 195, § 2, gave him concurrent authority with justices of the peace in that matter, and the depositions were properly admitted.

The ruling of the Judge, by which the plea in bar, and the evidence introduced by the respondent in support of it, was excluded from having any effect, presents a more serious question.

Whatever titles the petitioner and the respondent have, or claim to have to the lands of which partition is sought, is derived from Mary Larrabee.

The petitioner's title is by her deed to him of March 9,

Larrabee *v.* Rideout.

1842; and the respondent's title is as her devisee, she having deceased in 1855.

The judgment pleaded in bar was on a petition for partition against Mary Larrabee, in which the petitioner claimed partition of the same parcel of land described in the first count of this petition.

A *former judgment between the same parties, determining the same issue*, would, undoubtedly, be conclusive as a plea in bar, and such judgment, between the petitioner and Mary Larrabee, would have the same effect, for the respondent, being her devisee, is privy in estate with her. 1 Greenl. Ev. 8th ed., § § 189, 522, 523, 528, 531; *Colton* v. *Smith*, 11 Pick. 316; *Outram* v. *Morewood*, 3 East, 346.

In 1849, at the March term of the late District Court in the county of Cumberland, Nehemiah Larrabee (the petitioner in this case,) and Sarah C. L. Dakin, entered their petition for partition of two parcels of land described in the first and second counts in said petition, of which they alleged they were seized in common and undivided with Mary Larrabee. The land described in the first count in that petition was the same land described in the first count of the petition in this case, and the petitioner, Larrabee, claimed the same portion thereof as in this petition.

Mary Larrabee appeared in that case and pleaded sole seizin in herself, and, on trial of the issue, a verdict was rendered that she was sole seized in fee of the premises described in the first count in the petition, and, by the record, it appears that the verdict on the second count was in favor of the petitioners, and that the case proceeded with the usual progress of litigated actions until the April term of this Court, 1854, " when and where it was considered by the Court that the petitioners take nothing in the premises named in the first count of their petition, and that partition of the premises named in the second count in their petition be made, according to the verdict of the jury." It appears by the record that commissioners were then appointed, and that the petition was continued from term to term till the April term, 1855,

when it was thus recorded, "and now the said petitioners appear and have leave to discontinue the said petition against the said Mary Larrabee."

The process of partition, by petition, is analogous to that of a writ of partition, at common law; the former being a substitute for the latter. 1 Greenl. 376.

It is not adversary in its character, unless the petitioner's claim is resisted, and if so, and litigated, as the statute prescribes, the proceedings of the trial and its results are subject to the same legal rules which govern in other actions at law.

The proceedings, on the petition of Nehemiah Larrabee and Sarah C. L. Dakin against Mary Larrabee, have the same effect, as evidence in this case, as if that petition had been in his name alone, for the several shares which each petitioner claimed were specified therein, and, by R. S. of 1841, c. 121, § 16, as amended by statute of 1842, c. 31, § 16, the joinder was authorized.

The judgment of the Court, April term, 1854, was conclusive of the rights of the parties to the land described in the first count of the petition, and could not be affected by the continuance of the petition, for the purpose of completing the proceedings necessary to carry into effect the interlocutory judgment, that partition should be made of the land described in the second count.

The litigation had ceased. — The respondent was out of Court. — She could recover no costs for further attendance. She was then entitled to executions for her costs. *Ham* v. *Ham*, 43 Maine, 285.

The Judgments in favor of the petitioners and the respondent, at the April term, 1854, were both conclusive of their several rights in the matter, of the benefit of which judgments neither party could deprive the other after that Court had adjourned. *Brown* v. *Bulkely & al.*, 11 Cush. 169.

A discontinuance of a suit is similar to a nonsuit. It happens by reason of the plaintiff's fault, lapse or neglect. It occurs while the suit is in progress.

That the plaintiff might discontinue or become nonsuit, after the suit was terminated in the defendant's favor, would be an absurdity.

The plaintiff cannot become nonsuit or discontinue after a verdict for the defendant.

"After a general verdict, there can be no leave to discontinue, for that would be having as many trials as the plaintiff pleases." *Price* v. *Parker,* 1 Salk. 178; *Greene* v. *Monmouth,* 7 Mass. 467; *Haskell* v. *Whitney,* 12 Mass. 47 and Rand's notes; *Bridge* v. *Sumner,* 1 Pick. 371; 2 Johns. 181, 191; 3 Greenl. Ev. § 263.

Before the return of a verdict, the Court may permit the plaintiff to become nonsuit, but this cannot be done after the verdict is rendered. *Judge of Probate* v. *Abbott,* 13 N. H. 21.

If a plaintiff, after a verdict against him, could at his pleasure discontinue or become nonsuit on his own motion, and thereby vacate the verdict, the defendant could never recover a verdict which he could retain. A Judge presiding could not prevent the plaintiff from abandoning his action in Court, if he wished to do so; but such procedure on his part, alone, could not be permitted to deprive the defendant of the rights which he had already acquired by his verdict or judgment. To allow him to do so would operate very unequally — it would be oppressive — it would give the plaintiff as many new trials as he pleased to have, without giving the respondent any opportunity to be heard upon the question whether he should have them or not. Undoubtedly, the records of the judgments of the Court are conclusive of their correctness, however erroneous may have been the proceedings upon which they are founded, until the errors, if any, be legally corrected.

The well known accuracy and care of the late Chief Justice, who, at the April term of the Court, 1855, gave leave to enter, of record, a discontinuance of the petition against Mary Larrabee, render it highly improbable that he should have permitted such an improvident entry of record to be made on the plaintiff's motion, (the respondent being out of Court,

for "the judgment had expelled her," *Ham* v. *Ham*, before cited,) as would vacate the verdict and judgment which she had previously obtained; and, upon inspection of the record, we are satisfied that the discontinuance entered had no such effect.

The records of the whole case must be considered together, and they present a clear, unambiguous narrative of the proceedings — they show that the first count in the petition was finally adjudicated upon and disposed of in April, 1854, and that the respondent was then entitled to execution for her costs, and that the only petition against Mary Larrabee, which remained pending, was for the partition, which had been ordered by the Court, of the land described in the second count in the petition.

Having failed to obtain what they sought by the first count in their petition, the petitioners might have thought that a partition of the land claimed in the second count was not worth the expense of it, and they had a legal right to discontinue any further proceedings, but the discontinuance could be only of that which was then pending.

A discontinuance cannot be predicated of that which has been previously concluded.

When they had leave to discontinue their petition against Mary Larrabee, they had no petition against her, except *only* for partition of the land described in the second count of the original petition. The first count had been previously finally disposed of, and so it appears of record.

The plea in bar disclosed a valid defence against the petitioner's claim under the first count in his petition, which was erroneously excluded. *Exceptions sustained.*

TENNEY, C. J., concurred in the result. MAY, GOODENOW, and DAVIS, J. J., concurred.

CUTTING, J., *dissenting.*—It appears from the record of this Court, at the April term thereof, 1855, that the petitioner "had leave to discontinue his said petition against the said Mary Larrabee," who was allowed her cost, for which she re-

ceived her execution. Such an entry operated to make void all prior proceedings, and they will so remain as long as such entry continues upon the docket. The entry is a part of the record. The opinion discusses the authority of a Judge of this Court to authorize such an entry. Suppose he had no such authority, then let it be reversed or corrected, and *in* some way set right. It is not such a proceeding as can be avoided *collaterally*, like the record of inferior magistrates having no *jurisdiction* over the subject matter. It is almost every day's practice to enter neither party upon the docket, (which is the same as a discontinuance without costs,) even after verdict in cases where there has been a settlement by the parties. And who ever contended that debt or *scire facias* would lie on such a judgment? And, still, such records would be as valid as the one in question. The case discloses none of the circumstances which induced the Judge to permit the entry, and, if it did, they could not be introduced to impeach the record. It may have been allowed by agreement of parties. If the records of the highest court in this State can be so easily avoided, and set aside so summarily, they will be worthy of but little reliance.